# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

PHILLIP TURNER,

Plaintiff – Appellant,

v.

LIEUTENANT DRIVER, in his individual capacity; OFFICER GRINALDS, Badge Number 3825, in his individual capacity; OFFICER DYESS, Badge Number 2586, in his individual capacity,

Defendants – Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Civil Action No. 4:15-cv-00824-A

———————————————

## BRIEF FOR APPELLANT

———————————————

Kervyn B. Altaffer Jr.
State Bar No. 01116575
kervyn@altafferlaw.com
Lunbing Chen
State Bar No. 24097493
lunbing@altafferlaw.com

ALTAFFER & CHEN PLLC
4054 McKinney Avenue, Suite 310
Dallas, TX  75204

Meagan Hassan
State Bar No. 24065385
meagan.hassan@demondhassan.com

DEMOND & HASSAN PLLC
2450 Louisiana, #400-528
Houston, TX 77006

ATTORNEYS OF RECORD FOR APPELLANT PHILLIP TURNER

*ORAL ARGUMENT REQUESTED*

## Certificate of Interested Persons

(1)    Number and Style of the Case:

PHILLIP TURNER,
        Plaintiff - Appellant

**v.**                        No. 16-10312

LIEUTENANT DRIVER, in his individual capacity;
OFFICER GRINALDS, Badge Number 3825,
in his individual capacity; OFFICER DYESS,
Badge Number 2586, in his individual capacity,
        Defendants - Appellees

(2)    The undersigned attorney of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Phillip Turner, Plaintiff - Appellant

2.    Kervyn B. Altaffer Jr., Counsel for Plaintiff – Appellant
    Altaffer & Chen PLLC
    4054 McKinney Ave., Ste. 310
    Dallas, TX  75204

3.    Lunbing Chen, Counsel for Plaintiff – Appellant
    Altaffer & Chen PLLC
    4054 McKinney Ave., Ste. 310
    Dallas, TX  75204

4.   Meagan Hassan, Counsel for Plaintiff – Appellant
     Demond & Hassan PLLC
     2450 Louisiana, #400-528
     Houston, TX 77006

5.   Lieutenant Driver, Defendant – Appellee

6.   Officer Grinalds, Badge Number 3825, Defendant – Appellee

7.   Officer Dyess, Badge Number 2586, Defendant-Appellee

8.   Luis A Galindo, Counsel for Lieutenant Driver, Defendant - Appellee
     Law Office of Luis A Galindo
     600 Fort Worth Club Bldg
     306 West 7th St
     Fort Worth, TX 76102

9.   Kenneth E East, Counsel for Officer Grinalds, Defendant - Appellee
     Foster & East
     9001 Airport Freeway, Suite 675
     North Richland Hills, TX 76180

10.  D Lee Thomas, Jr., Counsel for Officer Dyess, Defendant-Appellee
     Law Office of D Lee Thomas
     507 West Central Ave
     Fort Worth, TX 76164-9135

11.  City of Fort Worth, Texas, Defendant (party not a party to the appeal),
     Defendants-Appellees' employer
     1000 Throckmorton Street
     Fort Worth, Texas 76102-6311

12.  Laetitia Coleman Brown, Counsel for City of Fort Worth, Texas
     Office of the City Attorney
     1000 Throckmorton Street
     Fort Worth, Texas 76102-6311

13. Gerald Pruitt, Counsel for City of Fort Worth, Texas
    Office of the City Attorney
    1000 Throckmorton Street
    Fort Worth, Texas 76102-6311

/s/ Kervyn B. Altaffer Jr.
KERVYN B. ALTAFFER JR.
State Bar No. 01116575
kervyn@altafferlaw.com

LEAD ATTORNEY OF RECORD
FOR APPELLANT
PHILLIP TURNER

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Suite 310
Dallas, TX 75204
Telephone: (972) 234-3633
Facsimile: (972) 947-3663

LUNBING CHEN
State Bar No. 24097493
lunbing@altafferlaw.com

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Suite 310
Dallas, TX 75204
Telephone: (972) 234-3633
Facsimile: (972) 947-3663

MEAGAN HASSAN
State Bar No. 24065385
meagan.hassan@demondhassan.com

DEMOND & HASSAN PLLC
2450 Louisiana, #400-528
Houston, TX 77006
Telephone: (713) 701-5240
Facsimile: (713) 588-8407

## Statement Regarding Oral Argument

Under Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 28.2.3, Appellant respectfully and conditionally requests oral argument because this case raises significant and urgent constitutional questions.

First, the district court ignored and bypassed Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizure and concluded that Appellant "has not demonstrated that any of the actions of movants violated *any* clearly established statutory or constitutional right...."

Second, this case gives this Court the opportunity to confirm whether the First Amendment right to film or photograph police activity in and from public places is clearly established where said right is exercised peacefully, at a reasonable time, place and manner and without interfering with police activity or traffic. Appellant respectfully believes that this court has previously alluded to the clearly established right and that such right was clearly established at the time of the events herein.

If this Court upholds the decision of the district court, it will allow plainly incompetent, rogue police officers to permissibly disregard citizens' constitutional and statutory rights while escaping liability via qualified immunity.

# Table of Contents

Certificate of Interested Persons…………………………………………………...ii

Statement Regarding Oral Argument……………………………………………v

Table of Contents……………………………………………………………….vi

Table of Authorities…………………………………………………………...viii

Jurisdictional Statement…………………………………………………………1

Statement of Issues ……………………………………………………………...2

Statement of the Case……………………………………………………………3

      A.     Introduction……………………………………………………...3

      B.     Facts Relevant to the Issues for Review…………………………...5

      C.     Relevant Procedural History…………………………………...12

      D.     Ruling Presented for Review……………………………………..13

Summary of the Argument ……………………………………............14

Standard of Review ……………………………………………………16

Argument…………………………………………………………............16

      A.     Fourth Amendment Rights………………………………………..16

           1. Clearly Established Law …………………………………...17

           2. Turner's Plausible Claims ………………………………….19

               a. Initial Detention……………………………………19

               b. Handcuffing and Arrest……………………………….27

               c. Continuation of Illegal Detention……………………29

      B.     First Amendment Rights…………………………………………30

           1. Clearly Established Law …………………………………...30

                a. The Right To Videotape the Police in the Performance

of Their Duties Subject to Reasonable Time, Place, and Manner Restrictions…………………………………………...31

b. First Amendment Right to Speak Out Without Retaliation…..38

2. Turner's Plausible Claims ………………………………………39

a. Claim for Interfering with Turner's Videotaping the Police Station and Activities...……………………………39

b. Claim for "Speaking Back" to assert his Rights……………...41

C. Qualified Immunity……………………………………………………42

Conclusion……….…………………………………………………............43

Certificate of Service…………………………………………………….....45

Certificate of Compliance …………………………………………………47

# Table of Authorities

**Cases**                                                             **Pages**

## I.    United States Supreme Court Cases

*Adams v Williams*,
    407 U.S. 143 (1972)……………………………………………………25, 28

*Anderson v. Creighton,*
    483 U.S. 635 (1987)…………………………………………………..31

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
    131 S.Ct. 2806 (2011)…………………………………………………...31

*Ashcroft v. al-Kidd,*
    131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)…………………………….....31

*Austin v. Michigan State Chamber of Commerce,*
    494 U.S. 652……………………………………………………………32

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………..16

*Branzburg v. Hayes*,
    408 U.S. 665 (1972)………………………………...…………………4, 31, 33

*Brown v. Texas*,
     443 U.S. 47 (1979)………...............................................3, 17, 18, 22, 28, 29

*Buckley v. Valeo*,
    424 U.S. 1 (1976)…………………………………………………..31

*Butterworth v Smith*,
    494 U.S. 624 (1990)…………………………………………………..32

*City of Houston, Tex. v. Hill*,
    482 U.S. 451 (1987)...………………………………………...…...38

*Citizens United v. Federal Election Comm'n,*
    558 U.S. 310 (2010)…………………………………………………...32

*Florida v. Bostick,*
    501 U.S. 429 (1991)………………………………………….......... 29

*Gentile v. State Bar of Nev.,*
    501 U.S. 1030 (1991)…………………………………………………32

*Graham v. Connor,*
    490 U.S. 386 (1989)…………………………………………………..27

*Hartman v. Moore,*
    547 U.S. 250 (2006)…………………………………………………..38

*Hiibel v. Sixth Judicial Dist. Court,*
    542 U.S. 177 (2004) ………………………………………..17, 18, 28, 29

*Houchins v. KQED, Inc.,*
    438 U.S. 1 (1978)……………………………………………………..31

*Illinois v. Wardlow,*
    528 U.S. 119 (2000)…………………………………………………...18, 29

*INS v. Delgado,*
    466 U.S. 210 (1984)…………………..............................................18

*Joseph Burstyn, Inc. v. Wilson,*
    343 U.S. 495 (1952)…………………………………………….…..32

*Lewis v. City of New Orleans,*
    415 U.S. 130 (1974)…………………………………….…………38

*Ornelas v. United States,*
    517 U.S. 690 (1996)…………………………………………………..24

*Pearson v. Callahan,*
    555 U.S. 223 (2009)…………………………………………………...42

*Saucier v. Katz,*
    533 U.S. 194 (2001)…………………………………………………...42

*United States v. Arvizu,*
    534 U.S. 266 (2002)…………….......................................................17

*Wilson v. Layne,*
    526 U.S. 603 (1999)…………………………………………………..31

**II.**     **United States Court of Appeals for the Fifth Circuit Cases**

*Brown v. Miller,*
    519 F.3d 231 (5th Cir. 2008)...……………………………………….42

*Bush v. Strain,*
    513 F.3d 492 (5th Cir. 2008)…………………………………..............27

*Enlow v. Tishomingo County,*
    962 F.2d 501 (5th Cir. 1992)……………………………...............33

*Freeman v. Gore,*
    483 F.3d 404 (5th Cir. 2007)...……………………………………….27

*In re Express-News Corp.,*
    695 F.2d 807 (5th Cir. 1982)…………………………………......4, 33

*James by James v. Sadler,*
    909 F.2d 834 (5th Cir. 1990)……………………………..............30

*Keenan v. Tejeda,*
    290 F.3d 252 (5th Cir. 2002)…………………………….....................39

*Melear v. Spears,*
    862 F.2d 1177 (5th Cir. 1989)...……………………………………….30

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011)…………..………………..………30, 31

*Pasco v. Knoblauch,*
    566 F.3d 572 (5th Cir. 2009)…………………………………….....42

*Shillingford v. Holmes*,
    634 F.2d (5th Cir. 1981)…………………………………………..…..33

*United States v. Hill,*
    752 F.3d 1029 (5th Cir. 2014) ……………………..17, 18, 20, 21, 26, 28, 29

*United States v. Sanders,*
    994 F.2d 200 (5th Cir. 1993)………………………….………..........17

*Valencia v. Wiggins*,
    981 F.2d 1440 (5th Cir. 1993)………………………………………......33

## III.    Other Federal Circuit Court Cases

*ACLU of Illinois v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012)…………………………………………....35
.
*Adkins v. Limtiaco,*
    537 Fed. App'x 721 (9th Cir. 2013)..………………………………………35

*Bart v. Telford,*
    677 F.2d 622 (7th Cir. 1982)……………………….......................39, 40

*Fordyce v. City of Seattle*,
    55 F.3d 436 (9th Cir. 1995)………………………………………….35, 36

*Gericke v. Begin*,
    753 F.3d 1 (1st Cir. 2014)…………………………………………......35

*Glik v. Cunniffe*,
    655 F.3d 78 (1st Cir. 2011)…………………………………......................35

*Iacobucci v. Boulter,*
    193 F.3d 14 (1st Cir. 1999)………………………………………………36

*Mocek v. City of Albuquerque*,
    813 F.3d 912 (10th Cir. 2015)…………………………………….....36

*Morris v. Noe,*
    672 F.3d 1185 (10th Cir. 2012)…………………………………………….27

*Smith v. City of Cumming*,
    212 F.3d 1332 (11th Cir. 2000)…………………………………….......35

*Smith v. Plati,*
    258 F.3d 1167 (10th Cir. 2001)…………………………………………40

*Williamson v. Mills*,
    65 F.3d 155 (11th Cir. 1995)…………………………………..………...36

**IV.    Federal District Court Cases**

*Baker v. Smiscik*,
    49 F. Supp.3d 489 (E.D. Mich. 2014)…………………………………..25

*Basler v. Barron*,
    No. H-15-2254, 2016 WL 1672573 (S.D. Tex. April 7, 2016)………........34

*Buehler v. City of Austin*,
    No. A-13-CV- 1100-ML, 2015 WL 737031
    (W.D. Tex. Feb. 20, 2015)……………………………………........33, 34

*Carter v. Gusman*,
    CIV.A.-09-4158, 2010 WL 819615 (E.D. La. Mar. 3, 2010)……...............25

*Gonzalez v. Huerta*,
    103 F. Supp. 3d 840 (S.D. Tex. 2015)……………………………….......25

*Higginbotham v. City of New York*,
    105 F. Supp.3d 369 (S.D. N.Y. 2015)…………………………………35, 36

*Turner v. City of Round Rock*,
    No. 1:15-CV-939-RP (W.D. Tex. May 25, 2016), ECF No. 43……...........34

**V.    Others**

*Ex parte Ronald Thompson*,
    442 S.W.2d 325 (Tex. Crim. App. 2014)…………………………….......37

*Sharp v. Baltimore,* No. 11-2888 (D. Md. Jan. 10, 2012), ECF No. 24 (*Statement of Interest of the United States*)………………………………………….36

## VI.  Constitutional Provisions

U.S. Const. amend. I………………………………………………………………31

U.S. Const. amend. I (First Amendment)………………………………….passim

U.S. Const. amend. IV (Fourth Amendment)……………………………...passim

## VII.  Statutory Provisions

42 U.S.C. § 1983…………………………………………………........1, 12, 16, 30

42 U.S.C. § 1988…………………………………………………..………....1

28 U.S.C. § 1291……………………………………………………………1

Texas Penal Code § 38.02 (a)……………………………..………8, 18, 28, 41

## Jurisdictional Statement

Plaintiff brought this action on October 30, 2015 under 42 U.S.C. §§ 1983 and 1988 against Defendants Lieutenant Driver, Officer Grinalds, and Officer Dyess alleging their conduct violated Plaintiff's rights under the First and Fourth Amendments to the Constitution. On February 19, 2016, the United States District Court for the Northern District of Texas, Fort Worth Division, granted Defendants' motions to dismiss, dismissed Plaintiff's Complaint for failure to state a claim, and entered a final, appealable judgment thereon.

Appellant filed a timely *Notice of Appeal* on March 18, 2016. This is a direct appeal from the entry of judgment granting Defendants' motions to dismiss. This Court has jurisdiction under 28 U.S.C. § 1291.

# Statement of Issues

1.  The Fourth Amendment protects the People from seizure (being detained) when police have no reasonable suspicion supported by specific and articulable objective facts supporting a belief that a person has committed, is committing or is about to commit a crime. Further, the Fourth Amendment protects the People from being detained by police merely for identification. Did Plaintiff state a viable claim for relief under the Fourth Amendment that was plausible on its face?

2.  The First Amendment protects the People's right to lawfully gather news from any source and to direct a significant amount of verbal criticism towards police officers. Plaintiff's activities did not interfere with public duties. These rights were clearly exercised in a reasonable time, place, and manner. Did Plaintiff state a viable claim for relief under the First Amendment that was plausible on its face?

3.  Plaintiff alleged sufficient and plausible facts that make out the violation of his Fourth Amendment and First Amendment constitutional rights by Defendants. The rights were clearly established at the time of the events in question. Did the district court erroneously rule that Defendants were entitled to qualified immunity?

## Statement of the Case

**A.    Introduction**

The United States Constitution clearly prohibits the police from detaining a person without reasonable suspicion supported by specific and objective facts that said person committed a crime (particularly for the mere purpose of establishing identity).[1] Despite this clear prohibition, Defendants unreasonably violated the Fourth Amendment and the district court erroneously ordered dismissal of all Plaintiff's claims.

Capturing images (including videotaping) is not a crime; it is a treasured First Amendment-protected activity. Yet Defendants treated videotaping in public as a crime then hid behind qualified immunity to shield them from liability. Constitutional protections should not disappear merely because the subjects of the videotaping are police and their activities.

Phillip Turner was walking on the public sidewalk at midday carrying only his video-camera (in plain view) and videotaping a Fort Worth police station (and the public activity thereat). Defendants argued that Turner's activities together with "the numerous recent, highly-publicized attacks on police" (which were not included in Turner's Complaint and which were wholly unrelated to any issue herein) created a reasonable suspicion that his exercise of his clearly established

---

[1] *Brown v. Texas*, 443 U.S. 47 (1979)

First Amendment rights constituted arguable criminal activities. Defendants failed to proffer any specific and articulable objective facts to support a reasonable suspicion that Turner had committed, was committing, or was about to commit any criminal conduct. Turner alleged no such facts existed.

Defendants approached Turner that day and demanded him to identify himself and to see his identification. Before Turner refused to do so, they detained him. When he then refused to identify himself, they handcuffed him and placed him in a police vehicle. Turner was finally released, but only after a lecture and a trespass warning from Defendant Lieutenant Driver.

Defendants violated Turner's Fourth Amendment right when they initially detained him; they further violated his rights when they arrested him by handcuffing him and putting him in the police car for his refusal to identify himself.

Further, the First Amendment right to gather information was clearly established at the time.[2] It is not necessary for this Court to defer to other circuits' opinions or decisions because this Court has already held that "news-gathering is entitled to first amendment protection, for 'without some protection for seeking out the news, freedom of the press could be eviscerated.'"[3] Moreover, a consensus of

_____

[2] *Branzburg v. Hayes*, 408 U.S. 665 (1972).
[3] *In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

other circuits had issued clear and consistent opinions finding that the First Amendment right to openly record police activity existed and was clearly established by the time of Defendants' actions in this case.

Rights are illusory when they can be permissibly violated by state actors without consequence. Therefore, Defendants are not entitled to qualified immunity under the facts alleged because they violated Turner's clearly established First and Fourth Amendments rights.

## B.     Facts Relevant to the Issues for Review[4]

At the time of the events, Appellant, Phillip Turner, was employed part-time, was a part-time student, and had hobbies including photography and videography.[5] Turner decided to videotape the activity at the Fort Worth Police Department offices located at 1100 Nashville Ave, Fort Worth, TX 76105.[6] On September 1, 2015 at midday, Turner was walking on a public sidewalk across the street from the Fort Worth Police Station.[7] Turner was not violating any laws and was not acting suspiciously or furtively; instead he was standing on the sidewalk in plain view wearing basketball shorts, a t-shirt, a hat, and sport shoes.[8] Turner was not

---

[4] *Plaintiff's First Amended Complaint and Jury Demand* (ROA.120-135) is the operative complaint.
[5] ROA.122 at ¶ 10.
[6] ROA.122 at ¶ 11.
[7] ROA.122 at ¶ 12.
[8] ROA.122 at ¶ 13.

armed with any weapon and was only carrying a video camera.[9] Turner was not threatening anyone, neither with words nor with actions.[10] Further, Turner was not interfering with traffic or with any activities of the Fort Worth Police Department.[11] Turner was simply observing and videotaping the activities thereat.[12] Turner was videoing the police to challenge their activity with the purpose of posting the video on his website, as acknowledged by Defendants.[13]

### Police Harassment and Detention

At all times relevant hereto, Defendant officers were acting under the color of the statutes, ordinances, regulations, customs, and usages of the City of Fort Worth and the State of Texas; Defendants were also acting under the authority of their respective offices as a police lieutenant and as police officers.[14]

While he was videotaping, Turner observed Officers Grinalds and Dyess drive up in a squad car, park on the same side of the street as the station, get out, cross the street, and walk up to Turner.[15] Officer Grinalds said to Turner "How's it going man?" and without giving Turner time to respond asked "Got your ID with

---

[9] ROA.123 at ¶ 14.
[10] ROA.123 at ¶ 15.
[11] ROA.123 at ¶ 16.
[12] ROA.123 at ¶ 17.
[13] ROA.144-145; ROA.183-184.
[14] ROA.123 at ¶ 18.
[15] ROA.123 at ¶ 19.

you?"[16] Turner kept videotaping and Officer Grinalds repeatedly kept asking Turner if he had ID with him.[17]

After several requests, Turner calmly asked if he was being detained.[18] Officer Grinalds responded that Turner was being detained for investigation and that they were concerned about who was walking around with a video camera; he said, "We like to know who's surrounding our complexes."[19] Officer Grinalds never explained how it was possible for one person with a video camera to "surround" anything, much less a City of Fort Worth police station.[20]

After the officers identified themselves, Officer Grinalds confirmed again that Turner was being detained.[21] Turner asked him for what crime he was being detained[22] and Officer Grinalds said "I didn't say you committed a crime."[23] He also said that he had the right to detain Turner for investigation.[24] "We have the right and authority to know who's walking around our facilities," he said while requesting Turner's identification.[25] Turner asked, "What happens if I don't ID myself?"[26] Officer Grinalds replied, "We'll cross that bridge when we come to

---

[16] ROA.123 at ¶ 19.
[17] ROA.123 at ¶ 20.
[18] ROA.123 at ¶ 21.
[19] ROA.123 at ¶ 22.
[20] ROA.123 at ¶ 23.
[21] ROA.124 at ¶ 24.
[22] ROA.124 at ¶ 24.
[23] ROA.124 at ¶ 25.
[24] ROA.124 at ¶ 25.
[25] ROA.124 at ¶ 25.
[26] ROA.124 at ¶ 25.

it."[27] Turner said "But you have to tell me what happens if I don't ID myself."[28] Officer Grinalds said he did not have to tell Turner what would happen and continued with repeated requests for Turner's ID.[29] In response, Turner politely asked the officer if he was familiar with Texas Penal Code § 38.02.[30]

### Police Assault and Arrest

Turner, who was not armed, did not take any steps to leave or flee, did not make any threats against the Defendant Officers or anyone else, and did not take any aggressive actions to give the Defendant Officers any concern for possible bodily harm to themselves or anyone else.[31] Turner stated that he was not going to identify himself.[32] The two officers then suddenly and without warning grabbed Turner, put handcuffs on him using excessive force, hurt his wrist, and effectively arrested him for no arguably legitimate reason.[33]

The officers took Turner's video camera away from him and turned it off.[34] Officer Grinalds said, "This is what happens when you don't ID yourself."[35] Turner asked for a supervisor to come to the scene, and one was right

---

[27] ROA.124 at ¶ 25.
[28] ROA.124 at ¶ 26.
[29] ROA.124 at ¶ 27.
[30] ROA.124 at ¶ 28.
[31] ROA.124 at ¶ 29.
[32] ROA.124 at ¶ 30.
[33] ROA.124 at ¶ 31.
[34] ROA.124 at ¶ 32.
[35] ROA.124 at ¶ 33.

across the street at the station house.[36] On the video, dispatch can be heard asking if Officer Grinalds is "in the parking lot with someone that was videotaping," to which Officer Grinalds can be heard replying, "Yes, I am" (when he was, in fact, not in the parking lot but instead on a sidewalk in front of the private residences across the street from the station).[37] Another voice believed to be the driver of a police car leaving the station can be heard off-camera confirming that he was calling it in.[38]

Officer Grinalds' voice can be heard off camera continuing to ask Turner for ID and saying, "you'll go on down and get fingerprinted then, so we know who you are."[39] The officers put Turner handcuffed into the back of their patrol car and left him there to sweat for a while (with the windows rolled up and no air being circulated to the back).[40] Turner banged on the door to try to get them to open the windows.[41] Turner saw Lt. Driver come out and talk with the other Defendant Officers.[42] They delayed and seemingly ignored Turner and left him to sweat for a

---

[36] ROA.125 at ¶ 34.
[37] ROA.125 at ¶ 35.
[38] ROA.125 at ¶ 36.
[39] ROA.125 at ¶ 37.
[40] ROA.125 at ¶ 38.
[41] ROA.125 at ¶ 39.
[42] ROA.125 at ¶ 40.

while.[43] Finally, the officers rolled the window down when Turner laid down on the seat exhausted from the heat and the actions of the officers.[44]

Lt. Driver came to the open window, identified himself, and said that he was the commander.[45] Lt. Driver asked Turner what he was doing and Turner told him that he was taking pictures from the sidewalk across the street.[46] Lt. Driver asked Turner if he had any ID on him; Turner said that he did not have to ID himself because he had not been lawfully arrested and that he chose not to freely give his information.[47] Lt. Driver replied to Turner, "You're right."[48] Lt. Driver left Turner in the back seat of the car and went back and talked with the other Defendant Officers some more.[49] Lt. Driver came back and talked with Turner again.[50] Turner asked him why they were treating him like a criminal and said, "You guys need to let me go because I haven't done anything wrong."[51]

Instead of replying to Turner's statement, Lt. Driver walked away and began talking with the other officers some more and was also talking on the phone.[52] All three officers then came back to where Turner was sitting in the car, opened the

---

[43] ROA.125 at ¶ 40.
[44] ROA.125 at ¶ 40.
[45] ROA.125 at ¶ 41.
[46] ROA.125 at ¶ 42.
[47] ROA.125-126 at ¶ 43.
[48] ROA.126 at ¶ 43.
[49] ROA.126 at ¶ 44.
[50] ROA.126 at ¶ 45.
[51] ROA.126 at ¶ 46.
[52] ROA.126 at ¶ 47.

door of the car, took Turner out of the car, and Lt. Driver started lecturing Turner.[53]

Turner asked if he could get his property back and Lt. Driver told him not until they were finished talking to him.[54] Lt. Driver was saying things which appeared to be an attempt to justify his officers' actions.[55] Finally, the officers released Turner and gave him his camera back.[56]

As Turner walked back across the street, Lt. Driver said the next time Turner stepped foot on their property he would be arrested for trespassing, even though (1) Turner was not on the property of the station at the time of his filming, detention, and handcuffing, and (2) the patrol car Turner was put into was parked on the street, not in the parking lot of the police station.[57]

The officers never apologized or showed any concern whatsoever for Turner or his civil rights.[58]

When Turner was handcuffed, he was on the public sidewalk in plain view during daylight hours for all persons driving by or arriving to observe.[59] Turner

_____

[53] ROA.126 at ¶ 48.
[54] ROA.126 at ¶ 49.
[55] ROA.126 at ¶ 50.
[56] ROA.126 at ¶ 51.
[57] ROA.126 at ¶ 52.
[58] ROA.126 at ¶ 53.
[59] ROA.127 at ¶ 54.

had to suffer the humiliation of being handcuffed and held in custody by multiple police officers as if he was accused of an actual crime.[60]

None of Turner's actions would have provided a reasonable officer with reason to believe that the officer had legal cause to detain Turner, seize Turner with force, and arrest Turner by placing him in handcuffs.[61]

Upon information and belief, none of the Defendants had information in the form of objective facts that would have allowed a reasonable officer to initially detain or to arrest Turner.[62]

## C. Relevant Procedural History

Turner brought this action on October 30, 2015 against Defendants under 42 U.S.C. § 1983 for the violation of his First and Fourth Amendment rights under the U.S. Constitution.[63] On January 12, 2016, Turner filed his unopposed motion for leave to amend and the district court entered its Order granting same on the same date.[64] *Plaintiff's First Amended Complaint and Jury Demand* was filed on January 12, 2016 and the City of Fort Worth was added as a party.[65]

Defendants each filed separate Rule 12(b)(6) motions to dismiss Plaintiff's Complaint for failure to state a claim upon which relief could be granted and

---

[60] ROA.127 at ¶ 55.
[61] ROA.127 at ¶ 56.
[62] ROA.127 at ¶ 57.
[63] ROA.2, 7 and 8 at ¶ 7.
[64] ROA.3 and 98-119.
[65] ROA.4 and 120-135.

asserted that Defendants were entitled to qualified immunity.[66] Defendants did not file Answers to Plaintiff's First Amended Complaint. Defendant Dyess's motion to dismiss was "essentially identical" to Defendant Grinalds's motion to dismiss.[67]

On February 19, 2016, the district court granted Defendants' motions to dismiss.[68] The district court directed the entry of final judgment on Plaintiff's claims against the individual defendants and the City of Fort Worth was retained as the only remaining Defendant. [69] The final judgment was immediately appealable.[70] Turner filed his timely *Notice of Appeal* on March 18, 2016.[71]

## D. Ruling Presented for Review

The district court granted Defendants' motions to dismiss, entered final judgment, and held that "He [Plaintiff] has not demonstrated that *any* of the actions of movants violated *any* clearly established statutory or constitutional right of plaintiff or that that any action taken by any of the movants was objectively unreasonable."[72] The district court stated that "When the unique facts of this case, as alleged by plaintiff, are considered, all movants enjoy qualified immunity for the actions they took in response to plaintiff's conduct."[73]

Turner appeals from this ruling.

---

[66] Grinalds ROA.137-162; Driver ROA.165-175; Dyess ROA.176-201.
[67] ROA.176.
[68] ROA.309-319.
[69] ROA. 319.
[70] ROA.320.
[71] ROA.345.
[72] ROA.317 (emphasis added).
[73] ROA.317.

# Summary of the Argument

In his district court Complaint, Turner alleged Defendants violated his rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution. He clearly set forth both facts and law supporting his allegations and demonstrating Defendants violated his clearly established rights. Turner additionally pled that a reasonable officer would have known Defendants' actions violated clearly established constitutional rights and that no reasonable officer would have taken such actions.

Specifically, the record shows Turner pled that he was videotaping a Fort Worth police station and activity threat on September 1, 2015 and there was a clearly established and unassailable right of individuals to be free of searches and seizures by the police without a modicum of reasonable suspicion. Clearly established law since 1979 requires police officers to have at least reasonable suspicion before detaining an individual; that reasonable suspicion must be supported by specific and articulable objective facts sufficient to believe that the individual had just committed a crime, was committing a crime, or was about to commit a crime. In his district court pleading, Turner alleged sufficient facts which establish a plausible right to recover under his Fourth and Fourteenth Amendment claims. The Court must take all facts pled by Plaintiff as true at this stage of litigation and Turner's factual allegations are sufficient to entitle him to

relief for Defendants' violation of his clearly established constitutional right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

Additionally, Turner has pled sufficient facts to support his cause of action for First and Fourteenth Amendment violations based on an alleged abrogation of his rights to freely film the police, based on clearly established First Amendment rights to gather information. Turner pled that at the time of the incident, he was recording the Fort Worth police station and public activities thereat without interfering with police activities in a reasonable time, place, and manner. Turner has pled sufficient facts to assert a plausible claim against Defendants for violating his First Amendment right to gather information by recording the police station and public activities thereat and to "speak back" to the Defendants by invoking those clearly established rights.

This Court is charged with deciding whether the facts alleged (taken in the light most favorable to Turner) establish a violation of Turner's constitutional rights, and, if so, whether those rights were clearly established at the time of the Defendants' alleged misconduct. Turner has shown that the facts as alleged make out clear violations of his constitutional rights under both the Fourth and First Amendments to the United States Constitution and that those rights were clearly established at the time of the incident.

## Standard of Review

This Court reviews the district court's dismissal of Plaintiffs' claims against Defendants de novo.[74] While the facts alleged in a Complaint challenged by a Rule 12(b) (6) motion must be clearly pled and specific enough to state a right to relief above the mere speculative level, the Complaint does not need to state overly detailed factual allegations.[75] This Court does not need to adopt any legal conclusions reached by the district court.[76] Once a Plaintiff has stated a claim adequately, it may be supported by any set of facts consistent with the allegations in the Complaint.[77]

## Argument

### A.      Fourth Amendment Rights

Turner asserted a plausible claim under 42 U.S.C. § 1983 against Defendants Grinalds and Dyess that Turner was illegally detained without reasonable suspicion to believe that 1) he had engaged in, 2) was engaging in, or 3) was about to engage in criminal activity.[78] Turner further asserted a plausible claim against Defendants Grinalds and Dyess that their illegal seizure was converted to an illegal arrest 1) without probable cause, 2) without a warrant, 3) without consent, and 4) without

---

[74] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).
[75] Id.
[76] Id.
[77] Id. at 570.
[78] ROA.128 at ¶ 63(a).

exigent circumstances when Turner was physically seized by Defendants with excessive force and handcuffed after informing them he was not going to identify himself.[79] Finally, Turner asserted a plausible claim against Lieutenant Driver, who admitted he was the commander, for continuing the unlawful seizure and subsequent handcuffing and arrest and keeping Turner locked in the back of the police car after Driver arrived on the scene.[80]

## 1.     Clearly Established Law

It has been clearly established law since 1979 that a police officer must have at least reasonable suspicion before detaining an individual and that the reasonable suspicion must be supported by specific and articulable objective facts sufficient to believe that the individual had just committed a crime, was committing a crime, or was about to commit a crime.[81] "Such a belief must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'"[82] To make a determination of whether the officer's suspicion, based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered.[83]

When the officer has no reasonable suspicion, individuals do not have to

---

[79] ROA.128 at ¶ 63(b).

[80] ROA.128 at ¶ 63(c)-(d).

[81] *Brown v. Texas*, 443 U.S. 47, 50-52 (1979); *see also Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 184 (2004) (making it clear that *Brown* is a preliminary requirement to stop and identify).

[82] *United States v. Hill,* 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *United States v. Sanders,* 994 F.2d 200, 203 (5th Cir. 1993)).

[83] *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

identify themselves in a "*Terry* stop."[84] Before *Brown v. Texas*, it was a criminal offense under Texas Penal Code § 38.02(a) for persons to refuse to identify themselves when lawfully stopped by the police.[85] The U.S. Supreme Court in *Brown v Texas,* however, found that even if the purpose of crime prevention "is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it."[86] In 1987, Texas Penal Code § 38.02(a) was amended to only require persons to identify themselves after they have been "lawfully arrested."[87]

"[A] 'seizure' under the Fourth Amendment must be 'justified at its inception.'"[88] Any facts learned by Defendants after seizing Turner may not be considered when evaluating the constitutionality of Defendants' initial seizure of Turner.[89] "A seizure begins when "all the circumstances surrounding the incident" are such that 'a reasonable person would have believed that he was not free to leave.'"[90]

---

[84] *See Illinois v. Wardlow,* 528 U.S. 119, 125 (2000) (citing *Florida v. Royer,* 460 U.S. 491, 498 (1983)).

[85] *Brown*, 443 U.S. at 54, n. 1.

[86] *Brown*, 443 U.S. at 52.

[87] Texas Penal Code § 38.02 (a) (Vernon's 2011).

[88] *United States v. Hill,* 752 F.3d 1029, 1033 (5th Cir. 2014) (citing *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)).

[89] *See United States v. Hill,* 752 F.3d 1029 (5th Cir. 2014) (illegally possessed weapon discovered by the police after suspect was seized could not be considered in determining whether there was reasonable suspicion for the initial seizure).

[90] *United States v. Hill,* 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *INS v. Delgado,* 466 U.S.

## 2.    Turner's Plausible Claims

Turner alleged sufficient facts that establish his plausible right to his Fourth Amendment claims.[91]  If the Court assumes, as it must, that all the facts pled by Plaintiff are true, then Turner's allegations are sufficient to plausibly entitle Turner to relief for Defendants' violation of his clearly established constitutional right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

### a.  Initial Detention

As soon as the Defendants arrived on the scene, they began asking Turner for his identification.[92] Before answering, Turner asked the officers if he was being detained.[93]

Before Turner refused to identify himself, Defendants told Turner *twice* that yes, he was detained.[94] A reasonable person would have believed he was not free to leave at this point. Defendants explained their reason for detaining Turner as follows: "We have the right and authority to know who's walking around our facilities."[95]

At the time of his initial detention the only activity that Turner was engaged in was walking on a public sidewalk videotaping a public building and the public

---

210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).
[91] See ¶ B. Facts Relevant to the Issues for Review
[92] ROA.123 at ¶¶ 19 and 20.
[93] ROA.123 at ¶ 21.
[94] ROA.123 at ¶¶ 19-23; ROA 124 at ¶¶ 24-28.
[95] ROA 124 at ¶ 25.

events around the building.[96] Turner was carrying only a video camera, was visibly unarmed, and was dressed in clothing that made it readily apparent that he was unarmed.[97] Turner was not violating any law, was not acting suspiciously or furtively, was not threatening any person, and was not interfering with any activities of the police.[98]

Defendants' motions to dismiss are best addressed initially by explaining "**the sorts of circumstances the government [Defendants in this case] did *not* show**."[99] The Defendants did not allege any facts showing any of the following: 1) that Defendants were responding to any report of criminal activity; 2) that Defendants had any particular reason to think that crime was happening where Turner was engaged in the lawful activity of videotaping at the moment of Defendants' arrival; 3) that Turner matched the description of anyone sought by the police; or 4) that Defendants had a "hunch" that Turner might be involved in criminal activity and then observed him for a "sufficient time to determine that criminal activity indeed reasonably appeared to be afoot."[100] Turner saw the police as they approached him,[101] and Defendants did not allege that Turner attempted to

---

[96] ROA.122 at ¶¶ 10-13; ROA.123 at ¶¶ 14-23.
[97] ROA.122 at ¶ 13; ROA.123 at ¶ 14.
[98] ROA.122 at ¶ 13; ROA.123 at ¶¶ 15-16.
[99] *Hill,* 752 F.3d at 1034 (emphasis added)
[100] *Compare* Hill*,* 752 F.3d at 1034 *with* Grinalds ROA.137-162, Driver ROA.165-175, and Dyess ROA.176-201.
[101] ROA.123 at ¶ 19.

flee or escape when they approached him.[102] Finally (unlike in *Hill*) Defendants did not even allege that the location of Turner's activities was a "high crime" area or that Turner's activities were being conducted at an unusual time or place or manner.[103] In *Hill*, this Court found that the government did not satisfy its burden to point out specific articulable facts warranting suspicion of criminal activity.[104] Defendants Grinalds, Dyess, and Driver similarly have not met their burden and Turner stated a claim upon which relief can be granted.

Further, although the Defendants are not required to show that they suspected a particular criminal act, they must show that they actually suspected criminal activity.[105] In their motions to dismiss, Defendants did not state any facts showing they actually suspected Turner of any crime.[106]

When Turner asked Defendants for what crime he was being detained, Defendants did not identify any crime.[107] Instead, Defendants stated their real reason for detaining Turner: "We have the right and authority to know who's walking around our facilities."[108]

Defendants do not have such a right which trumps Turner's clearly

---

[102] Grinalds ROA.137-162; Driver ROA.165-175; Dyess ROA.176-201.
[103] *Compare Hill*, 752 F.3d at 1035 *with* Grinalds ROA.137-162; Driver ROA.165-175; Dyess ROA.176-201.
[104] *Hill*, 752 F.3d at 1038.
[105] *See Id.* at 1033 ("[L]aw enforcement [must] point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or about to commit, a crime.").
[106] Grinalds ROA.137-162; Driver ROA.165-175; Dyess ROA.176-201.
[107] ROA.124 at ¶¶ 24-25.
[108] ROA.124 at ¶ 25.

established Fourth Amendment right. The right of personal privacy is paramount over the right of the police to detain persons when there is no reasonable basis for suspecting criminal activity.[109]

Defendants allege no specific articulated facts to support a "reasonable" belief that Turner had just committed a crime, was committing a crime, or was about to commit a crime.

In attempting to establish a justification for the detention under the "totality of the circumstances," Defendants asserted that:

1. Due to information about Turner they discovered on the internet, they inferred Turner's "motives" were improper and they alleged other suits had been filed by Turner as evidence of Turner's improper motives[110];

2. A call had been placed to the station by another officer who saw Turner as he was exiting the parking lot concerning Turner[111];

3. Turner was walking up and down a sidewalk video-recording officers entering and leaving the police station through a security gate[112]; and

4. Numerous publicized attacks have been committed against the police and

---

[109] *Brown*, 443 U.S. at 52 ("In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference…. But even assuming that purpose [prevention of crime] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.").

[110] ROA.144-145; ROA.183-184.

[111] ROA.151; ROA.190.

[112] ROA.151; ROA.190.

assaults conducted against police stations.[113]

None of these purported facts constitutes "specific and articulable objective facts" supporting a reasonable belief that Turner himself 1) had committed, 2) was committing, or 3) was about to commit a crime.

First, regarding the information discovered about Turner on the internet, Defendants appear to have inserted this wholly irrelevant[114] information into their motions to try to discredit and denigrate Turner and outrage the Court against Turner's choice of political expression and activity, because Defendants expressly stated they were not asserting the information from the websites for its truth.[115] Defendants did not refer to this information in their briefs when stating the reasons that they had the right to detain Turner,[116] nor did they allege that they knew the information before the incident.[117] If Defendants did not know about Turner's website at the time, then this proof-less statement by counsel in a 12(b)(6) motion cannot constitute any relevant fact supporting Defendants' unreasonable assessment of reasonable suspicion because such assessment must be viewed in

_____

[113] ROA.143, 151; ROA.182, 190.
[114] Turner contends this information is irrelevant to proving reasonable suspicion as it is not evidence of criminal activity but the information is relevant to Turner's First Amendment claim as it shows that Defendant's admit that Turner's activity was a form of challenge to police activity with the expressive purpose of posting the video-recording on Turner's YouTube website.
[115] ROA.142 n.2; ROA.181 n.2.
[116] ROA.150-155; ROA.189-194.
[117] ROA.144-145; ROA.183-184.

23

light of what the Defendants knew at the time.[118] Even if all the information

provided by the Defendants was taken as true (which is not the proper standard for

a motion to dismiss), nothing therein supports a belief that Turner was doing

anything criminal on the day in question, because no facts set forth by Defendants

contained in the website were criminal or related to any criminal activity of Turner.

Second, Defendants asserted that a call placed by another officer created

reasonable suspicion to detain Turner; however, there is no allegation that the

officer reported any criminal activity by Turner.[119] The call referenced by

Defendants[120] is the call Turner included in his complaint that could be heard on

his video tape:

> "36. Another voice believed to be the driver of a police car leaving the
> station can be heard off camera confirming that he was calling it in
> when he was coming out of the gate."[121]

There is no mention of what the call was about and definitely no facts given that

supported allegations of suspicious behavior by Turner.   At most, the call

evidences that Turner was observed to be filming, nothing more and certainly

nothing criminal. The cases cited by Defendants involve completely different fact

---

[118] *Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.").
[119] ROA.150-155; ROA.189-194.
[120] ROA.147; ROA.186.
[121] ROA.125 at ¶ 36.

scenarios that are readily distinguished.[122]  A crime tip is not the same thing as a

report that a person is merely present video-taping which in itself is not a criminal

activity and attempts to equate the two eviscerate the Fourth and First Amendment

protections.

Third, with regards to the allegation "that Turner was walking up and down

a sidewalk video-recording officers entering and leaving the Police Station through

a security gate," this activity is not criminal and Defendants did not assert any facts

tying this activity to any alleged criminal activity or suggesting any criminal

activity. The Court is requested to take judicial notice that numerous activities of

the police at various police stations (including "the officers entering and leaving

the Police Station through a security gate") are in public view and already available

for anyone to record through numerous websites such as Google Earth

---

[122] ROA.152-153; ROA.191-192. *See also Adams v Williams*, 407 U.S. 143 (1972) (Defendant Police Officer received a tip from a reliable informant that the suspect was armed and dangerous); *Gonzalez v. Huerta*, 103 F. Supp. 3d 840 (S.D. Tex. 2015) (Defendant Police Officer received a tip from a school employee that a suspicious person was sitting in a car in the school parking lot, the placement of the car and orientation were suspicious, and there had been recent car thefts from the school parking lot); *Baker v. Smiscik*, 49 F. Supp.3d 489, 498 (E.D. Mich. 2014) (Defendant Police received a report of a 911 call and when they arrived on the scene Plaintiff was dressed in camouflage and carrying a FNP-45 Tactical pistol secured in a leg holster, with a TLR-2 rail mounted tactical light with a laser sight attached to the pistol walking in a residential neighborhood singing "Hakuna Matata" loudly enough to be heard from a police cruiser); *Carter v. Gusman*, CIV.A.-09-4158, 2010 WL 819615, at *7 (E.D. La. Mar. 3, 2010) (a witness had reported a possible crime by Plaintiff and pointed out the Plaintiff to the Defendant Officer, the Defendant Officer knew that crime often occurred at the convenience store involved, and Plaintiff had just been released from jail and the Police officer followed Plaintiff after he was released to the convenience store).

(https://www.google.com/earth/).[123] If all the police have to do is subjectively claim that activity is suspicious, then the requirement for specific and articulable objective facts to support a reasonable belief will be rendered nonexistent.

Finally, as to the Defendants' claims about alleged attacks on the police and assaults on police stations, there are no facts alleged that even remotely connect Turner to those actions; the actions Defendants alleged did not even occur in the same city or county as the events in this case. This Court has held that such evidence "tells us almost nothing about whether the police had reasonable suspicion to seize [Plaintiff] at one [location], in one single town within the county."[124] There simply cannot be any logical or reasonable comparison of crimes committed by other people (not Turner) attacking the police with weapons and the actions of Turner when it was openly obvious to Defendants that Turner was only "armed" with a video camera and no weapons. If such evidence is allowed to establish reasonable suspicion, then police will always have qualified immunity for any actions they take because all they have to do is assert unrelated violence against the police as a basis for reasonable suspicion.

At the time of Turner's initial detention, Defendants failed to articulate any specific objective facts that would support a reasonable belief that Turner had just

---

[123] There are over 20+ alternative sites that use the same satellite imagery. They even show the back parking lot behind the gate. Examples include: http://www.wikimapia.org; http://www.mapquest.com; http://earthexplorer.usgs.gov; and http://www.flashearth.com.
[124] *Hill,* 752 F.3d at 1035.

committed, was committing or was about to commit any criminal activity and therefore there was no reasonable suspicion to support the initial detention of Turner.[125]

### b. Handcuffing and Arrest

After being told twice that he was detained, Turner, who was not armed, did not take any steps to leave or flee, did not make any threats against the Defendant Officers or anyone else, and did not take any aggressive actions to give the Defendant Officers any concern for possible bodily harm to themselves or anyone else.[126] Even so, Defendants Grinalds and Dyess, with no warning, physically seized Turner with force, handcuffed him on the public sidewalk for all persons to see, and took away his camera immediately upon being told by Turner that he was not going to identify himself.[127] They then took Turner and locked him in their police car across the street for all persons to see.[128] This action transformed Turner's detention into an arrest requiring probable cause or a warrant.[129]

---

[125] ROA.127 at ¶ 57.

[126] ROA.123 at ¶¶ 21-23; ROA.124 at ¶¶ 24-29.

[127] ROA.124 at ¶¶ 30-31; ROA.127 at ¶¶ 54-55.

[128] ROA.125 at ¶¶ 38; ROA.127 at ¶¶ 54-55.

[129] *Freeman v. Gore,* 483 F.3d 404 (5th Cir. 2007) (woman was arrested where she was threatened with arrest if she did not permit deputies to search her home, she replied "Have at it," and she was then handcuffed and placed in cruiser for 30-45 minutes); *Morris v Noe,* 672 F.3d 1185, 1192 (10th Cir. 2012) ("an unreasonable level of force transforms a Terry detention into an arrest requiring probable cause"; throwing man to the ground who presented no threat to officer safety and was not engaged in suspicious activity was an arrest). *See also Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (To gauge the reasonableness of the force used, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

This state action clearly violated Turner's Fourth Amendment right to be free from unreasonable seizure merely for the purpose of identifying him and his right under Texas law that he did not have to identify himself until he was lawfully arrested.[130]

Citing *Adams v. Williams*, 407 U.S. 143 (1972) and *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004), Defendants argued Turner's refusal to identify himself or produce an identification card before his seizure (or during his seizure but before his arrest) constituted a refusal to cooperate and thus a basis to seize him.[131] Because Defendants had already detained Turner, however, the fact that he refused to identify himself could not be used to justify his detention.[132]

*Adams* was decided in 1972, seven years before *Brown v. Texas* made it clear that a person could not be seized merely for identification purposes.[133] Further, Defendants failed to mention that in *Adams*, the Defendant police officer had received a tip from a reliable informant that the Plaintiff was armed – this single fact materially distinguishes *Adams* herefrom.[134]

In *Hiibel,* the issue was whether a state police officer in a state with a "stop

---

actively resisting arrest or attempting to evade arrest by flight.").

[130] *Brown*, 443 U.S. at 50-52; Texas Penal Code § 38.02 (a) (Vernon's 2011).

[131] ROA.153-154; ROA.191-192.

[132] *See Hill,* 752 F.3d at 1033 (illegally possessed weapon discovered by the police after suspect was seized could not be considered in determining whether there was reasonable suspicion for the initial seizure).

[133] *Brown*, 443 U.S. at 52.

[134] *Adams v Williams*, 407 U.S. 143, 144, 145 (1972).

and identify statute" (which Texas does not currently have and did not have at the time of *Hiibel*) could lawfully arrest a person for failure to identify himself **after** the person had been stopped according to the requirement in *Brown* (specifically, that "that the initial stop [must be] based on specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity.")[135] *Hiibel* started where *Brown* left off and did not change the holding therein.[136]

Finally, in a *Terry* stop, "when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business."[137] Further, any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."[138]

### c.    Continuation of Illegal Detention

Due to the fact that Plaintiff's seizure at its inception was not based upon reasonable suspicion and was therefore unlawful, any continued seizure was also illegal.[139] Defendant Driver's contentions that he had a reasonable time to investigate are without merit because the seizure was illegal at its inception.[140]

Defendant Driver was not a mere bystander, but was an active participant

---

[135] *See Hiibel*, 542 U.S. at 180-184.
[136] *Hiibel*, 542 U.S. at 184.
[137] *Illinois v. Wardlow,* 528 U.S. at 125 (citing *Florida v. Royer,* 460 U.S. 491, 498 (1983)).
[138] *Illinois,* 528 U.S. at 125 (quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991)).
[139] *See Hill,* 752 F.3d at 1029.
[140] Id.

instead in the illegal seizure by continuing to keep Turner handcuffed and locked in the police car after Defendant Driver arrived and took charge.[141] Further, continuing to detain Turner for a lecture after the decision to release him had been made is also an illegal continuation of the seizure.[142] Therefore, Defendant Driver is also liable for the continuation of the illegal seizure of Turner.[143]

## B.    First Amendment Rights

Turner asserted a plausible claim under 42 U.S.C. § 1983 against Defendants for violations of his First Amendment rights to (1) gather information (by videotaping) at a reasonable time, place, and manner, without interfering with traffic or any activities of the police, and (2) assert his constitutional rights without retaliation; these claims were based upon Defendants' decision to detain, handcuff, and arrest Turner, to stop him from video-taping by seizing and turning off his camera, and to issue a trespass warning to him.[144]

### 1.    Clearly Established Law

For the law to be "clearly established", the law must have clearly and unambiguously prohibited the conduct so that "every reasonable official would understand that what he is doing violates [the law].'"[145] The Fifth Circuit looks to

---

[141]  ROA.125 at ¶¶ 40-43; ROA.126 at ¶¶ 44-52.

[142]  ROA.126 at ¶¶ 48-51.

[143] *James by James v. Sadler*, 909 F.2d 834 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989).

[144] ROA.127-129.

[145] *Morgan v Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (internal punctuation omitted) (citing

"controlling authority or a 'robust consensus' of persuasive authority that defines the contours of the right in question with a high degree of particularity."[146]

### a. The Right to Videotape the Police in the Performance of their Duties Subject to Reasonable Time, Place, and Manner Restrictions

The First Amendment bars Congress from making any law abridging freedom of speech or of the press.[147] In 1972, the U.S. Supreme Court clarified that these protections also extended to gathering information as well as publishing information.[148] The law was therefore clearly established before the events herein that the First Amendment to the United States Constitution protects the rights of people to gather information.[149] "[T]here is practically universal agreement that a major purpose of 'the First Amendment' was to protect the free discussion of governmental affairs."[150] Further, "the dissemination of information relating to alleged governmental misconduct … [is] 'speech which has traditionally been

---

*Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (emphasis added) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

[146] *Morgan v Swanson,* 659 F.3d 359, 371, 372 (5th Cir. 2011) (citing *Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999))).

[147] *U.S. Const. amend. I.*

[148] *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) ("Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated.").

[149] *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) ("[t]here is an undoubted right to gather news from any source by means within the law'") (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972)).

[150] *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2828 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (internal quotation marks omitted; second alteration in original)).

recognized as lying at the core of the First Amendment.'"[151] In order to disseminate information, one must first be able to gather it.

The U.S. Supreme Court recognized as early as 1952 that audio-video recordings (films) were media of expression commonly used for the preservation and dissemination of information and ideas and thus were "included within the free speech and free press guaranty of the First and Fourteenth Amendments."[152] Further, in 2010 the Supreme Court clarified that the First Amendment rights enjoyed by the formal press extend and apply to all citizens.[153] Quoting from a Scalia dissent, the majority observed that the court had "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers."[154] Thus, at least as early as 2010, the ultimate controlling authority had ruled that there was a clearly established First Amendment right of all persons to gather information about the government including via filming.

As early as 1981, the Fifth Circuit, although without mentioning the First Amendment, found that a police officer's "unprovoked and unjustified" assault of plaintiff who "was photographing what the policeman did not want to be memorialized" and "was not involved in the arrest incident and did not interfere

---

[151] *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034-35 (1991) (quoting *Butterworth v Smith*, 494 U.S. 624, 632 (1990).
[152] *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952).
[153] *Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010).
[154] *Id.* at 352 (quoting *Austin v. Michigan State Chamber of Commerce*, 494 U.S. 652, 691 (Scalia, J., dissenting)).

with the police in any fashion" established a deprivation of constitutional rights.[155] In 1982, this Court noted that "news-gathering is entitled to first amendment protection, for 'without some protection for seeking out the news, freedom of the press could be eviscerated.'"[156] In 1992, in a case where the plaintiff claimed that he was arrested after enquiring about a raid and taking a photograph of the Sheriff, this Court held that, if true, the plaintiff's allegations were "sufficient to state a cognizable First Amendment claim."[157] This is a clear recognition by the Fifth Circuit of a clearly established First Amendment right to record the police.

Further, a year before the district court's decision in this case, a district court in the Western District of Texas held that there was a clearly recognized right to videotape the police (without interfering with the performance of their duties) subject to reasonable time, place, and manner restrictions.[158] The underlying events in the case took place in 2012, well before the events in this case.[159]

Based upon controlling authority in the Supreme Court decisions and the

---

[155] *Shillingford v. Holmes*, 634 F.2d 263, 264, 266 (5th Cir. 1981) abrogated on other grounds by *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993).

[156] *In re Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

[157] *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir. 1992) (assuming the plaintiff's allegations were true, the court held that arresting the plaintiff for photographing a police raid where he did not interfere violated the plaintiff's First Amendment rights).

[158] *Buehler v. City of Austin*, No. No. A-13-CV-1100-ML, 2015 WL 737031, at *9 (W.D. Tex. Feb. 20, 2015) ("In light of the existing Fifth Circuit precedent and the robust consensus among circuit courts of appeals, the Court concludes that the right to photograph and videotape police officers as they perform their official duties was clearly established at the time of Buehler's arrests.").

[159] *Id.* at *3-6.

Fifth Circuit decisions, none of which were even mentioned by the district court, and considering the *Buehler* decision, there was a clearly established First Amendment right to videotape the police without interfering in the performance of their duties, subject to reasonable time, place, and manner restrictions, by September 1, 2015.

Since the district court's decision in this case, two other district courts in Texas have held that the right to videotape the police was clearly established.[160] The most recent favorable district court decision in this respect is *Turner v. City of Round Rock*; this case involves the same Plaintiff (Phillip Turner) as in this case and almost identical facts.[161] In both of these Texas district court cases, the events occurred before the events in this case, which would make the right clearly established by the time of the actions of the Defendants in this case.[162]

As a district court in the Second Circuit noted: "if one accepts that photographing and filming receive First Amendment protection as a general matter (at least when they are 'expressive'), it is difficult to see why that protection should disappear simply because their subject is public

---

[160] *Basler v Barron*, No. H-15-2254, 2016 WL 1672573 (S.D. Tex. April 7, 2016) (Miller. G.) (Order denying in part individual defendant police officer's motion to dismiss); *Turner v. City of Round Rock*, No. 1:15-CV–939-RP (W.D. Tex. May 25, 2016), ECF No. 43 (Pitman, J.) (Order denying in part individual defendant police officers' motions to dismiss).

[161] *Turner v. City of Round Rock*, No. 1:15-CV–939-RP (W.D. Tex. May 25, 2016), ECF No. 43.

[162] *See Basler v Barron*, No. H-15-2254, 2016 WL 1672573 (S.D. Tex. April 7, 2016) and *Turner v. City of Round Rock*, No. 1:15-CV–939-RP (W.D. Tex. May 25, 2016), ECF No. 43.

police activity."[163]

In the event that this court finds it necessary to look at additional persuasive authority, in 1995, the Ninth Circuit recognized a "First Amendment right to film matters of public interest."[164] By 2012, three other circuits had recognized that the First Amendment protects an individual's right to record police officers in the course of carrying out their duties in public, subject to limitations.[165] In 2014 another First Circuit decision concluded that it was a clearly established First Amendment right to record police making a traffic stop.[166] Every circuit decision addressing the issue within the last fifteen years has recognized that the First Amendment protects video recording of public official activity.[167]

---

[163] *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D. N.Y. 2015).

[164] *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

[165] *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000), *cert. denied,* 531 U.S. 978, 121 S.Ct. 426, 148 L.Ed.2d 435 (2000) ("The First Amendment protects the right to gather information about what public officials do on public property," including the right "to photograph or videotape police conduct."); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2001) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within [the First Amendment]."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("The act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording.").

[166] *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014).

[167] *See, e.g.*, *Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014) ("the Constitution protects the right of individuals to videotape police officers performing their duties in public"); *Adkins v. Limtiaco*, 537 Fed. App'x 721, 722 (9th Cir. 2013) (holding that allegations that plaintiff was arrested in retaliation for taking photos of the police in public stated a claim for First Amendment retaliation); *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 599-600 (7th Cir. 2012) (holding that a statute that would prohibit recording police officers with a cell phone violated the First Amendment); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (holding "unambiguous" the constitutional right to videotape police activity); *Smith v. Cumming*, 212 F.3d at 1333 (11th Cir.

In 2015, the Tenth Circuit discussed whether there was a First Amendment right to film the police in public, but did not rule on whether there was such a right; instead the court ruled that the Plaintiff could not claim First Amendment retaliation because his arrest was arguably supported by probable cause.[168] Additionally, the filming in that case was not on public property but was at an airport checkpoint instead, which was not a public forum.[169] Finally, the events in that case took place in 2009, not 2015.[170]

Contrary to the finding of the district court in this case, there was not a split in authority in fact in the circuit decisions about whether there was a First Amendment right to record the police in the performance of their duties.[171] The two circuit court decisions cited by the district court as creating a conflict only decided whether the right was clearly established at the time of the events in those

---

2000) (finding "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); *Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999) (holding that filming public officials in a public area "was done in the exercise of [Plaintiff's] First Amendment Rights"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (holding that recording of police conduct fell within the "First Amendment right to film matters of public interest"); *Williamson v. Mills*, 65 F.3d 155, 157-59 (11th Cir. 1995) (reversing the district court's grant of qualified immunity to a police officer who demonstration participant). *See also Sharp v. Baltimore,* No. 11-2888 (D. Md. Jan. 10, 2012), ECF No. 24, at p. 1 (*Statement of Interest of the United States*) ("[The] right to record police officers while performing duties in a public place, as well as the right to be protected from the warrantless seizure and destruction of those recordings, are not only required by the Constitution . . . [t]hey are constituent with our fundamental notions of liberty, promote the accountability of our government officers, and instill public confidence in the police officers who serve us daily.").

[168] *Mocek v. City of Albuquerque*, 813 F.3d 912, 931, 932 (10th Cir. 2015).

[169] *Id*. at 930.

[170] *Id*. at 920.

[171] *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 381 (S.D. N.Y. 2015).

cases – 2006 and 2007. The two cases did not decide that the right to record the police did not exist, but merely that if it did exist, it was not clearly established at the time of the events in those cases.[172] "They are thus not relevant to the question whether there is a consensus on the existence of a journalist's right to record events in which he is otherwise a nonparticipant."[173]

Additionally, Defendants had further clear and adequate notice that the First Amendment right to record the police existed on September 17, 2014, when the Court of Criminal Appeals of the State of Texas ruled that a person's "purposeful creation of photographs and visual recordings is entitled to the same First Amendment protection as the photographs and visual recordings themselves."[174]

The United States Supreme Court has clearly held there is a First Amendment right of all persons to gather information and filming is included in that right. The Fifth Circuit has recognized there is a First Amendment right to videotape the police without interfering. Therefore, there is a robust consensus addressing the issue that found that there was a clearly recognized First Amendment right to videotape the police in the performance of their duties without interfering, subject to reasonable time, place, and manner restrictions and that such right was clearly established at least by the time of the actions of

---

[172] *Id.*
[173] *Id.*
[174] *Ex parte Ronald Thompson*, 442 S.W.2d 325, 337 (Tex. Crim. App. 2014).

Defendants on September 1, 2015. There is a robust consensus of persuasive authority from other jurisdictions that there is a recognized First Amendment right to videotape the police in the performance of their duties and that such right was clearly established by September 2015.

Thus, at the time of the events in question there was a clearly established First Amendment right to gather information by recording the Fort Worth police station and public activities at the police station without interfering with the activities of the police, subject to reasonable time, place, and manner restrictions.

### b.    First Amendment Right to Speak Out Without Retaliation

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking  out."[175] The First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers."[176] Verbal conduct directed at police, not consisting of "fighting words" or amounting to obstruction, is protected speech.[177] The right to speak out without government retaliation was clearly established at the time of Turner's detention, handcuffing and arrest.

---

[175] *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citations omitted).
[176] *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).
[177] *See id.* at 461-63; *Lewis v. City of New Orleans*, 415 U.S. 130, 133-34 (1974).

## 2.    Turner's Plausible Claims

In order to have a first amendment claim, Turner must show three things: "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [Turner's] exercise of constitutionally protected conduct."[178]

### a. Claim for Interfering with Turner's Videotaping the Police Station and Activities

For the first requirement, Turner pled that the only activity he was engaged in was video-taping the police station and activities at the police station,[179] a constitutionally protected activity as shown above. Defendants did not contest that Turner was videotaping the police station and activity from the public sidewalk and Defendants proffered that Turner was engaged in challenging the police activity with the express purpose posting his video on his YouTube website.[180]

For the second requirement, the Court must consider the law on what constitutes an injury in a First Amendment case. "[A] tort to be actionable requires injury," which, in this context, is the deprivation of a constitutional right."[181] The question is "whether a person of ordinary firmness would have been deterred by

---

[178] *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).

[179] ROA.122 at ¶¶11-13; ROA.123 at ¶¶14-20.

[180] ROA.144-145; ROA.183-184.

[181] *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)).

these ominous events from [continuing to video-tape the police]."[182] The answer is "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable."[183] "The focus . . . is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled."[184]

Turner pled that he was detained, was subsequently handcuffed and his camera taken from him.[185] Turner was initially handcuffed on the sidewalk in plain view for all passersby to see, and then was placed in the back of a police car to "sweat it out" while waiting on the supervisor to come, even though they were right outside the police headquarters.[186] Turner had to suffer the humiliation of being handcuffed and held in custody by multiple police officers as if he were a common criminal.[187] Such actions would chill an ordinary person from continuing to video-tape the police station and the activities at the police station.

For the third requirement, Turner pled that the only activity he was engaged in was video-taping at the time of the events, at a reasonable time, place, and manner and without interfering with any activities of the police.[188] While the Defendants might contend that such actions were not taken because of Turner's

---

[182] *Id.*
[183] *Id.* (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)).
[184] *Id.* (quoting *Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir. 2001)).
[185] ROA.123 at ¶¶ 19-23; ROA.124 at ¶¶ 24-33.
[186] ROA.124 at ¶¶ 24-33; ROA.125 at ¶¶ 34-43; ROA.127 at ¶ 55.
[187] ROA.127 at ¶ 55.
[188] ROA.122 at ¶¶ 11-13; ROA.123 at ¶¶ 14-20; ROA.127 at ¶¶ 59-60; ROA.128 at ¶ 61.

video-taping, at a minimum the facts pled by Turner are sufficient to allege a claim that Defendants were motivated by Turner's videotaping the police station and activities thereat when they unlawfully retaliated against him.

Further, the actions of Defendant Driver in lecturing Turner and in giving a trespass warning to Turner[189] alleged facts sufficient to allege a claim of retaliation for Turner's activities in filming the Police Station.

### b. Claim for "Speaking Back" to assert his Rights

For the first requirement, Turner pled that when the police first arrived and asked him for his identification, Turner asked if he was being detained and they told him he was detained; Turner asked for what crime he was being detained and Defendant Grinalds said he did not say Turner committed a crime. [190] Then, Turner asked what would happen if he did not "I.D." himself and Defendant Grinalds informed Turner that he did not have to tell him what would happen; Turner politely asked if Defendant was familiar with Texas Penal Code § 38.02 and then stated he was not going to identify himself; Defendants then immediately (and with no warning) physically grabbed Turner, handcuffed him with force, and took away and turned off his camera. [191] These facts are sufficient to allege a plausible claim that Defendants' detention, handcuffing and arresting Turner were done because

---

[189] ROA.126 at ¶¶ 48-53; ROA.128 at ¶ 63.
[190] ROA.123 at ¶¶ 19-23; ROA.124 at ¶¶ 24-25.
[191] ROA.124 at ¶¶ 25-32.

Turner spoke back to the officers and asserted his right not to identify himself.[192]

Turner has pled sufficient facts to assert a plausible claim against Defendants for violation of Turner's First Amendment rights (1) to gather information by recording the police station and public activities thereat and (2) to "speak back" to the Defendants by invoking his clearly established rights.

## C.    Qualified Immunity

To determine whether qualified immunity applies, a two-part test established in *Saucier v. Katz,* 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009) is applied. In a motion to dismiss, the court will determine whether the facts as alleged by the plaintiff establish the violation of a constitutional or other federal right.[193]

Under the *Saucier* framework, the Court decides: "(1) whether facts alleged or shown by plaintiff make  out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."[194]

Turner has shown that the facts as alleged make out violations of his constitutional rights under both the Fourth and First Amendments to the United

---

[192] *See Norwell v City of Cincinnati*, 414 U.S. 14 (1973) (The court reversed an arrest and conviction of disorderly conduct where Plaintiff's verbal and negative protest of the arresting officer's detention of him (the grounds for the arrest and conviction) was protected activity and it was clear that there was no abusive language or fighting words.).

[193] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

[194] *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

States Constitution.[195] Turner has further shown that such rights were clearly established at the time of Defendants' violations of the rights.[196]

With regard to the Fourth Amendment claims, Turner pled that the rights he claimed that Defendants violated were clearly established at the time of the events.[197] With regard to his First Amendment claims, Turner also pled that the rights were clearly established.[198] With regard to the actions taken by Defendants in violating Turner's rights, Turner pled that a reasonable officer would have known such actions violated clearly established constitutional rights and no reasonable officer would have taken such actions.[199]

Therefore, the District Court should not have held that the Defendants were entitled to Qualified Immunity.

## Conclusion

Turner has pled facts that show that Defendants violated Turner's Constitutional rights under the First Amendment to videotape the public police activity subject to reasonable time, place, and manner restrictions, to verbally criticize and challenge police officers and to be free from retaliation for exercise of the rights thereof. Further these First Amendment rights were "clearly established" at the time of the challenged conduct.

---

[195] See Paragraphs III. A. FOURTH AMENDMENT and III. B. FIRST AMENDMENT.
[196] See Paragraphs III. A. FOURTH AMENDMENT and III. B. FIRST AMENDMENT.
[197] ROA.132 at ¶¶ 79-82.
[198] ROA.132 at ¶¶ 75-78.
[199] ROA.133 at ¶¶ 83-84.

Moreover, Turner has alleged facts that show Defendants violated Turner's constitutional right to remain free from unreasonable seizure under the Fourth Amendment and said rights were "clearly established" at the time of the challenged conduct.

Defendants' additional new facts pled in Defendants' Motion To Dismiss do not meet Defendants' burden to show specific and articulable objective facts that establish under the totality of the circumstances the reasonableness of Defendants' actions in seizing Turner, and hence, Defendants are not entitled to qualified immunity and their Motions should be denied.

Turner therefore respectfully requests that this Court reverse the district court's ruling and remand the case to the district court with instructions to deny Defendants' motions.

Respectfully submitted this 15th day of June, 2016.

BY: */s/* Kervyn B. Altaffer Jr. _____
KERVYN B. ALTAFFER JR.
State Bar No. 01116575
kervyn@altafferlaw.com

**LEAD ATTORNEY OF RECORD**
**FOR APPELLANT**
**PHILLIP TURNER**

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Suite 310
Dallas, TX 75204
Telephone: (972) 234-3633
Facsimile: (972) 947-3663

LUNBING CHEN
State Bar No. 24097493
lunbing@altafferlaw.com

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Suite 310
Dallas, TX  75204
Telephone: (972) 234-3633
Facsimile:  (972) 947-3663

MEAGAN HASSAN
State Bar No. 24065385
meagan.hassan@demondhassan.com

DEMOND & HASSAN PLLC
2450 Louisiana, #400-528
Houston, TX 77006
Telephone: (713) 701-5240
Facsimile: (713) 588-8407

## Certificate of Service

In compliance with Fed. R. App. P. 31, 5th Cir. R. 31, and ECF Filing Standards, I certify that a PDF copy was served electronically when this brief  was filed through the ECF system on the following counsel of record:

Luis A Galindo
Law Office of Luis A Galindo
600 Fort Worth Club Bldg
306 West 7th St
Fort Worth, TX 76102
(t)  817-335-5722
(f) 817-877-3723
Luisgalindo-pllc@sbcglobal.net

Counsel for Lieutenant Driver, Defendant – Appellee

Kenneth E East
Foster & East
9001 Airport Freeway, Suite 675
North Richland Hills, TX 76180
(t) 817-788-1111
(f) 817-485-2836
Ken@fostereast.com

Counsel for Officer Grinalds, Defendant - Appellee

D. Lee Thomas, Jr.
Law Office of D Lee Thomas
507 West Central Ave
Fort Worth, TX 76164-9135
(t)  817-625-8866
(f)  817-625-8950
dlthom31@yahoo.com

Counsel for Officer Dyess, Defendant-Appellee

In accordance with 5th Cir. R. 31.1 and ECF Filing Standards, I further certify that seven copies of this brief will be filed without a cover letter within five  days of its ECF filing with the clerk of the Court by first-class United States mail.

In accordance with 5th Cir. R. 25.2.13, I further certify that all privacy  redactions have been made.

In accordance with 5th Cir. R. 25.2.1, I further certify that the electronic  submission is an exact copy of the paper document.

Finally, I certify that the document has been scanned for viruses with the  most recent version of a commercial virus scanning program and is free of viruses.

/s/Kervyn B. Altaffer Jr.
Kervyn B. Altaffer Jr.

# Certificate of Compliance

Under 5th Circuit Rule 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5th Circuit Rule 32.2.7(b).

1. Exclusive of the portions exempted by 5th Circuit Rule 32.2.7(b) (3), this brief contains 10,895 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Office Word 2010 software.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvent of the type-volume limits in 5th Circuit Rule 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.


*/s/* Kervyn B. Altaffer Jr.
Kervyn B. Altaffer Jr.

**LEAD ATTORNEY OF RECORD FOR APPELLANT PHILLIP TURNER**